# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

SALLY WORDEN,           )
                                 )
      **Plaintiff,**          )
                                 )
V.                             )        **Case No. 4:14CV1361NCC**
                                 )
CAROLYN W. COLVIN,     )
**Acting Commissioner of Social Security,** )
                                 )
      **Defendant.**         )

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Sally Worden (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a Brief in Support of the Complaint. (Doc. 15). Defendant has filed a Brief in Support of the Answer. (Doc. 18). Plaintiff filed a Reply Brief. (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 10).

# I.
## PROCEDURAL HISTORY

On May 9, 2011, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of March 22, 2011. (Tr. 11, 65-66, 123-36). Plaintiff's applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 11, 64-77, 81). After a hearing, by decision, dated March 14, 2013, the ALJ found Plaintiff not disabled. (Tr. 11-27). On June 4, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of

impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228

F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See

id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to

include all of a plaintiff's limitations, but only those which the ALJ finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was born in 1960, alleged she became disabled at age 50, due to a back injury, right hand problems, right knee problems, breathing problems, and bipolar disorder. (Tr. 123, 130, 153). She testified, at the hearing, that she had chronic pain in her back; she felt pain and pressure in her neck since 2009; she had problems with her right shoulder; as a result of bone replacement surgery in her right thumb, she had difficulty using her hand and fingers for buttoning, zipping,

and doing snaps; her grip was weak; and she had difficulty holding onto objects. (Tr. 41-47).

The ALJ found that Plaintiff met the insured status through December 31, 2016; she had not engaged in substantial gainful activity since March 22, 2011, her alleged onset date; she had the severe impairments of degenerative disc disease of the spine, degenerative joint disease of the hips and hands, osteoarthritis, headaches, adjustment disorder, and alcohol abuse; and Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: no climbing ladders, ropes, and scaffolds and no exposure to hazards including unprotected heights. The ALJ also found that Plaintiff could frequently do fine fingering and manipulation and was capable of understanding, remembering, and carrying out at least simple instructions and non-detailed tasks. After considering the testimony of a VE and considering the Dictionary of Occupational Titles (DOT), the ALJ concluded that Plaintiff's RFC did not preclude her from performing her past relevant work. Alternatively, based on the testimony of the VE and her independent consideration of the DOT, the ALJ found that, given Plaintiff's RFC, age, education, and work experience, there were other jobs in that national economy, existing in significant numbers, which

Plaintiff could perform. As such, the ALJ found that Plaintiff was not disabled. (TR. 11-27).

Plaintiff contends that the ALJ's decision is not based on substantial evidence because there was no medical evidence to support the ALJ's RFC determination and because, when considering Plaintiff's credibility, the ALJ referenced Plaintiff's drinking alcohol and her criminal conviction for growing marijuana.[1] (Doc. 15 at 12-15). For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's determination that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a

---

[1]  To the extent Plaintiff takes issue with the ALJ's RFC determination, she challenges the ALJ's findings relevant only to her physical limitations.

whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's

testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's daily activities. In particular, the ALJ considered that Plaintiff stated in a Function Report – Adult that, in a typical day, she made coffee, took her dog outside, called her daughter, and cleaned her house with the help of her husband. The ALJ also considered that Plaintiff said she exercised daily and was trying to go back to school "so that she could go back to work." (Tr. 16-17, 162-67). Further, Plaintiff reported that she took care of her "partner" and "fix[ed] his food and ke[pt] house"; that she cleaned her cat's litter box and walked her dog; that she prepared food or meals "daily"; and that she was able to do the laundry and gather the trash. (Tr. 163-64). As considered by the ALJ, in June 2012, Plaintiff told Dwayne Helton, D.O., a primary care doctor, that she developed a rash "after working in the garden." (Tr. 19, 423). Also, in August 2012, Plaintiff told her doctor that she was walking a mile a day. (Tr. 420).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, a claimant's daily activities can

nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"). Moreover, to the extent Plaintiff urges the court to reweigh the evidence regarding Plaintiff's daily activities and draw its own conclusion in this regard, it is not the function of the court to do so. See Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations omitted). In any case, Plaintiff's daily activities were only one of many factors considered by the ALJ when determining Plaintiff's credibility. (Tr. 11-27).

Second, the ALJ considered that Plaintiff had not generally received the type of medical treatment one would expect for a totally disabled individual. (Tr. 18, 22). A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination that a claimant lacked credibility due in part to

"absence of hospitalizations . . ., limited treatment of symptoms, [and] failure to diligently seek medical care"); 20 C.F.R. § 404.1529(c)(3)(v) (the agency will consider the claimant's treatment when evaluating her symptoms). Notably, Plaintiff last visited Chris Friesen, D.O., in April 2011, and did not establish treatment with a new doctor until September 2011. (Tr. 18, 22, 294, 434-35).

Third, the ALJ considered that Plaintiff received conservative treatment. (Tr. 22). Conservative treatment is consistent with discrediting a claimant's allegation of disabling pain. Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2012). In this regard, when Plaintiff was evaluated for back, neck and hip pain, in January 2013, the only recommendation was that she receive injections. (Tr. 382).

Fourth, as considered by the ALJ, Plaintiff's conditions improved with treatment and surgery. (Tr. 20, 22). Conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling). As considered by the ALJ, although Plaintiff had surgery for her right hand, it was reported by

William Kennon, D.O., on December 9, 2011, one week after the surgery, that Plaintiff said "90% of her pain had been resolved," and that, upon examination, she had full range of motion (ROM) in her fingers, intact sensation to light touch, and "good motor function to the hand." Dr. Kennan concluded that Plaintiff had a "[s]atisfactory postop release first dorsal compartment right wrist." (Tr. 19, 336-37).

As considered by the ALJ, after Plaintiff again had right-hand surgery, on January 17, 2012 (Tr. 341), it was reported, about a month later, that Plaintiff was in no apparent distress; she had full ROM of her second through fifth digits; swelling had improved; sensation to light touch was intact; and Plaintiff was to continue working on ROM of her digits and could begin working on "gentle" ROM of her thumb, but no gripping. (Tr. 343). It was reported approximately twelve weeks after surgery, on April 13, 2012, that Plaintiff had "difficulty with apposition of her thumb," but that she had full flexion of her fingers; there was a "slight stiffness with end" ROM; Plaintiff had full extension; and the circulation and sensation in her hand were intact. (Tr. 19, 347). On May 23, 2012, Plaintiff told Dr. Helton that she was doing well on her current medications, although she still had right thumb pain. (Tr. 19, 424). On May 25, 2012, four months after surgery, Plaintiff "still ha[d] some aches/slight pain, especially with pushing, shoving and pulling." She also had "mild stiffness in her hand" and discomfort

and occasional cramping with "overuse." She lacked "approximately 5 [degrees] of full thumb opposition," but the remainder of her ROM was "near full," with 5/5 strength throughout. Plaintiff was told not to return for two months, unless any problems or questions arose. (Tr. 19, 349).

On July 25, 2012, Plaintiff reported that her ROM had improved; that she was doing "very well"; and that she was "back to performing all her activities of daily living without difficulty." She also denied abnormal sensation and numbness. Upon examination, it was noted that, although Plaintiff "lack[ed] a few degrees of full thumb opposition," the remainder of her ROM was "near full" [with] 5/5 strength throughout." Notably, Plaintiff was released from orthopedic care on this date. (Tr. 20, 22, 351). Also, as considered by the ALJ, when Plaintiff's right shoulder was injected, on October 19, 2012, she "noticed near complete resolution of her shoulder pain" after "approximately 5 minutes." (Tr. 20, 362).

Fifth, the ALJ considered that, despite Plaintiff's claiming that she had ongoing debilitating symptoms, in several instances when she saw a doctor, she failed to specify any particular complaints. (Tr. 18-20). Contradictions between a claimant's sworn testimony and what she actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006). Indeed, when Plaintiff saw Dr. Friesen, on January 24, 2011, her only complaint

was a sore throat. (Tr. 296). On March 2, 2011, Dr. Friesen reported that Plaintiff's only problem was that she was irritable, frustrated and upset. (Tr. 295). On April 1, 2011, Dr. Friesen reported that Plaintiff had no complaints and was just there for the flu. (Tr. 294). When Plaintiff first saw Dr. Helton, in September 2011, Plaintiff complained of right upper arm and hand pain and weakness, but did not complain of back or neck pain. (Tr. 17, 434-35). Although Plaintiff presented on July 30, 2012, because she had right shoulder pain which had been getting worse for the last three months, she reported, five days earlier, on July 25, 2012, that she was back to performing all her daily activities. (Tr. 351).

Sixth, the ALJ considered that Plaintiff worked in the past, despite impairments which she alleged were disabling. (Tr. 22-23). When a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years."). In this regard, as considered by the ALJ, Plaintiff began complaining of back pain in June 2010, but did not stop working until March 2011. (Tr. 22-23).

Seventh, as considered by the ALJ, Plaintiff stopped working for reasons other than her allegedly disabling conditions. (Tr. 17, 21, 23). Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. Medhaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). Notably, Plaintiff testified that she left her most recent job as a housekeeper, in March 2011, due to conflicts with a coworker. (Tr. 42-43).

Eighth, as considered by the ALJ, Plaintiff's applying for unemployment benefits undermined her allegation of disability. (Tr. 21, 23-14). Although not conclusive of disability, a claimant's receipt of unemployment benefits may reasonably erode the credibility of her disabling complaints. Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014). Further, to qualify for unemployment benefits in Missouri, a claimant must assert that she is able and available to work. See Mo. Rev. Stat. § 288.040. See also Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991) (finding claimant's application for unemployment benefits adversely affected his credibility; "[a] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work."). Indeed, in May 2011, Plaintiff told Thomas J. Spencer, Psy. D., that she applied for unemployment benefits after she lost her housekeeping job in 2011, but that her application was denied because of

her "fighting." (Tr. 263). Additionally, Plaintiff's earnings record reflects that she received some unemployment benefits in 2011. (Tr. 24, 144).

Ninth, as considered by the ALJ, Plaintiff actually looked for work after she left her housekeeping job. (Tr. 17, 21). See Melton v. Apfel, 181 F.3d 939, 942 (8th Cir. 1999) (finding that a claimant's continued job search "undermine[d] his claim that he was unable to work"). Indeed, Plaintiff testified that, in March 2011, after she lost her housekeeping job, she applied for housekeeping jobs at motels and nursing homes. (Tr. 40).

Tenth, the ALJ considered that no treating doctor recommended that Plaintiff significantly restrict her activities. (Tr. 24). See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.") (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996)). See also Eichelberger, 390 F.3d at 590 (ALJ could find claimant not credible based in part on fact that no physician imposed any work related restrictions). Significantly, twelve weeks after her hand surgery, Plaintiff's doctor recommended that she "increase her activities" and work "on getting opponents of her thumb." (Tr. 19, 347). Also, in September 2012, Dr. Helton counseled Plaintiff regarding exercise. (Tr. 421).

Eleventh, to the extent Plaintiff contends the ALJ's entire credibility analysis is flawed because she mentioned that Plaintiff admitted drinking wine and that Plaintiff had been convicted for growing marijuana (Doc. 15 at 14-15), and to the extent the ALJ actually considered these factors, Plaintiff's alcohol use and marijuana conviction were just of few of the numerous factors the ALJ considered, and the record does not reflect that the ALJ's ultimate determination regarding the severity of Plaintiff's impairments was contingent on her alcohol use or her marijuana conviction. See Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently had he read the hand-written notation to say 'walk' rather than 'work' and any error by the ALJ was therefore harmless.").

Moreover, the ALJ found that Plaintiff's severe impairments included alcohol abuse, and the record is not devoid of support for such a finding. In this regard, Dr. Spencer's diagnosis included ruling out alcohol abuse. (Tr. 266). In any case, the ALJ's references to alcohol abuse and to Plaintiff's marijuana conviction were brief and her decision does not reflect that these factors actually played a role in her credibility determination or that she considered them as negative factors in assessing Plaintiff's credibility. (Tr. 11-27). Notably the ALJ acknowledged that Plaintiff testified that, after serving five years' probation for growing marijuana, she avoided any marijuana-related activities. (Tr. 17, 47-48).

Further, to the extent Plaintiff argues that the ALJ was biased against her because of her alcohol abuse and marijuana conviction, the court finds that Plaintiff has failed to present evidence to overcome the presumption that the ALJ exercised her authority with "honesty and integrity." Collier v. Comm'r of Soc. Sec., 108 F. App'x 358, 363-64 (6th Cir. 2004) (unreported) (quoting Navista Int'l. Transp. Corp. v. EPA, 41 F.2d 1339, 1360 (6th Cir. 1991)).

Twelfth, the ALJ considered that the Social Security claims representative noted that Plaintiff did not appear to have any difficulty hearing, reading, breathing, understanding, being coherent, concentrating, talking, answering, sitting, standing, walking, seeing, using her hands, and writing; that Plaintiff was pleasant; and that the representative observed no limitations, although Plaintiff wore a brace on her right hand. (Tr. 16, 159-60). Cf. Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because she is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations").

Thirteenth, the ALJ considered that Plaintiff's medical records reflected that Plaintiff took numerous medications, with no side effects, although Plaintiff testified that she had side effects from her medications, including lightheadedness,

dizziness, and fatigue. (Tr. 16-17, 45). The ALJ also considered that when Plaintiff saw Dr. Helton, on May 23, 2012, her medications were refilled without any adjustments. (Tr. 19, 424-25). The absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994).

Fourteenth, although Plaintiff does not take specific issue with the ALJ's failure to find she had a severe mental impairment, the ALJ considered that, other than occasional visits with her primary doctor, Plaintiff did not receive any mental health treatment, except for one hospital stay in the 1990s. (Tr. 21-22). Indeed, Plaintiff saw Dr. Friesen, her primary care doctor, complaining of depression symptoms in November 2007 and September 2008, and he prescribed medications. (Tr. 398, 407). A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006). Also, in regard to Plaintiff's alleged mental impairment, she told Dr. Helton, on August 22, 2012, that walking a mile a day helped with her racing thoughts and anger issues. (Tr. 20). Cf. Pelkey v. Barnhart, 433 F.3d 575, 579

(8th Cir. 2006) (affirming ALJ's credibility determination based in part on claimant's doctors having recommended exercise and medication but never surgery).

Fifteenth, the ALJ considered the results of objective medical testing. (Tr. 18-20). See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004); Social Security Ruling (SSR) 06-7p(4), 1996 WL 374186, at *1 (July 2, 1996) ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence," although a disability determination "cannot be made solely on the basis of objective medical evidence."). Indeed, a claimant's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities to the extent that [her] alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." Id. at *2. Notably, March 2010 lumbar spine x-rays showed "[s]light L2-3 disc space narrowing and retrolisthesis of L2 in relation to L3," small endplate spurs, and vascular calcification. (Tr. 253). Thoracic spine x-rays of this same date showed "slight dextroscoliosis" and endplate spurs. (Tr. 255). As considered by the ALJ, a June 2010 x-ray of Plaintiff's lumbar spine, taken during an emergency room visit, showed no acute fracture, pars defect or subluxation, and showed possible stenosis at the bifurcation. (Tr. 18, 245). An October 17, 2012

arthrogram of Plaintiff's right shoulder showed no displaced "labral tear," mild supraspinatrus and infraspinatus tendinopathy without rotator cuff tear, and mild to moderate acromioclavicular osteoarthritis. (Tr. 366-67). Plaintiff had Magnetic Resonance Imaging (MRI) of the cervical spine, on December 3, 2012, which showed normal discs at C2-3, C3-C4, and C4-C5; at C5-C6; that there was a "slight narrowing of the right lateral recess and the right neural foramen"; and that there was a left parasagittal bulging disc at C6-C7. The MRI also showed that the spinal cord was intact without spinal stenosis. (Tr. 414).

In conclusion, the court finds that the ALJ gave good reasons for finding Plaintiff's allegations regarding the severity of her conditions not fully credible, and that her analysis was carefully linked to the evidence of record. See Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) ("If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment.") (internal quotation marks and citation omitted). As such, the court further finds that the ALJ's credibility determination is based on substantial evidence and consistent with the Regulations and case law.

**B.  Plaintiff's RFC:**

The Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider

the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010)

("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); <u>Eichelberger</u>, 390 F.3d at 591.

As stated above, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations: no climbing ladders, ropes, and scaffolds, and no exposure to hazards including unprotected heights. She could frequently perform fine fingering and manipulation bilaterally. The ALJ also found that Plaintiff was capable of understanding, remembering, and carrying out at least simple instructions and non-detailed tasks. Plaintiff argues that she had "multiple orthopedic impairments" for which she received treatment and that it was "not reasonable" for the ALJ to conclude that a person with such impairments could perform light work. (Doc. 15 at 13-14).

The Regulations define light work as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Dec. 12, 1983).

First, the court notes that to prove disability the evidence must establish functional limitations, not just medical diagnosis. <u>See</u> 20 C.F.R. §§ 404.1545(e),

416.945(e); <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . ., of course, says nothing about the severity of the condition."). Indeed, the record reflects that Plaintiff had a "slight narrowing" of the cervical spine and a bulging disc at C5-C6, but the record does not reflect that she had resulting functional limitations.  In any case, the ALJ's limiting Plaintiff to light work accommodated her alleged back issues, to the extent the ALJ found them credible, as light work precluded Plaintiff from frequently lifting more than ten pounds and only occasionally lifting no more than twenty pounds.  <u>See</u> <u>Tindell v. Barnhart</u>, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").

To the extent Plaintiff contends that the ALJ did not consider whether she could perform light exertional work "on a sustained basis" (Doc. 15 at 14), at Step 4 of the sequential analysis, the ALJ explicitly acknowledged that RFC describes the "ability to do physical and mental work activities *on a sustained basis*."  (Tr. 12-13) (emphasis added).  Indeed, Plaintiff's questioning the ALJ's judgment that the evidence is insufficient to establish disability does not establish a basis upon which the ALJ's decision should be reversed and remanded.  <u>See</u> <u>Goff</u>, 421 F.3d at 789 ("An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

Based on Plaintiff's history of bilateral hand pain and right-hand surgery, the court might disagree with the ALJ's conclusion that Plaintiff could engage in frequent fine manipulation bilaterally. Nonetheless substantial evidence supports the ALJ's conclusion. Specifically, the Eighth Circuit holds that a reviewing court may not reverse an ALJ's determination "simply because substantial evidence exists in the record that would have supported a different outcome" or "because [the reviewing court] would have decided the case differently." Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (internal citations omitted). Notably, in regard to Plaintiff's right hand, as discussed above in regard to Plaintiff's credibility, one week after her December 2011 surgery, she reported ninety percent of her pain had resolved and she had full ROM in her fingers; one month after her January 2012 surgery, Plaintiff had improved; twelve weeks after her second surgery, Plaintiff had full flexion in her fingers, full extension, full sensation in her fingers, and only a slight stiffness with end ROM; four months after her second surgery, Plaintiff had full strength and she lacked only five degrees of full thumb opposition and her ROM was "near full; and, by July 2012, Plaintiff was back to performing all activities of daily living without difficulty and she was released from orthopedic care. (Tr. 336-37, 347, 349, 351). Cf. 20 C.F.R. § 414.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the

duration requirement."). Thus, despite Plaintiff's argument to the contrary, the ALJ's RFC determination that Plaintiff could engage in frequent fine manipulation bilaterally is supported by substantial evidence as set forth above. (Doc. 15 at 12-13).

As for Plaintiff's allegation of back and right knee pain and breathing difficulty, as discussed above in regard to Plaintiff's credibility, in March 2011, Plaintiff's only problem was that she was irritable, and, in April 2011, her only problem was that she had the flu. (Tr. 294-95). In September 2011, Plaintiff's complaints related to her hand and upper arm, but she did not complain of anything else. (Tr. 434-35). In February 2012, Dr. Helton's assessment did not include any of the conditions which Plaintiff claims as disabling, other than generalized anxiety disorder; in May 2012, Plaintiff's only complaint was related to her hand; in June 2012, the only problem noted by Dr. Helton was that Plaintiff had a rash; and, in July 2012, Plaintiff was performing all activities of daily living. (Tr. 423-24, 426, 351).

Although, in January 2013, Plaintiff complained of muscle, back pain, neck, and joint pain, stiffness in her joints, joint swelling and weakness, examination showed her right knee and left lower extremity had normal muscle strength, ROM, tone, and stability. Notably, in regard to Plaintiff's musculoskeletal system, Plaintiff had tenderness in her cervical and lumbar spine which was described as

"diffusely" moderate and the tenderness in her sacral spine was moderate; her reflexes and sensation were normal; Plaintiff's "straight leg raise [was] asymptomatic bilaterally"; and she had no instability. A neurological examination showed Plaintiff's motor and sensory systems and reflexes were normal. The assessment did include intervertebral disc disorder of the lumbar intervertebral disc without myelopathy. Also, a psychiatric examination showed Plaintiff had a normal level of consciousness, orientation, judgment and insight, memory, mood and affect, language, fund of knowledge, and capacity for sustained mental activity. (Tr. 377-79). Significantly, as discussed above, the ALJ accommodated Plaintiff's alleged back pain by limiting her to light work, with no climbing or exposure to hazards, and she accommodated Plaintiff's allegation of a mental disability by limiting Plaintiff to jobs which require only simple instructions and non-detailed tasks.

Also, in regard to Plaintiff's allegation of breathing problems, medical records reflect that, in July 2012, Plaintiff's "HEENT," cardiovascular, and chest examinations were normal, although it was frequently noted that she had chest pain and wheezing with "deep breathing." (Tr. 348-50, 352-53, 355). Notably, when Plaintiff was examined, in January 2013, it was reported that her respiratory and cardiovascular systems were normal. (Tr. 379).

Also, as discussed above, Plaintiff received conservative treatment for her back pain, and the record does not reflect that she had surgery for any of her alleged disabling physical conditions, other than hand pain.  See Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2012) (conservative treatment and no surgery are consistent with discrediting a claimant's allegation of disabling pain). Further, as discussed above, Plaintiff stopped working for reasons other than her allegedly disabling conditions, see Medhaug, 578 F.3d at 816-17; she worked as a housekeeper with back pain, see Dixon, 905 F.2d at 238; and, after she stopped working in March 2011, she looked for work, see Melton, 181 F.3d at 942.

As required by the Regulations, the ALJ determined Plaintiff's RFC after carefully considering all the evidence of record, as demonstrated by her lengthy narrative addressing the medical evidence and Plaintiff's testimony and allegations.  See Tucker, 363 F.3d at 783.  Additionally, when ascertaining Plaintiff's RFC, the ALJ moved analytically, from her consideration of the extent of Plaintiff's impairments to her determining the kind of work Plaintiff could perform.  See Anderson, 51 F.3d. at 779.  In any case, upon determining Plaintiff's RFC, the ALJ was fulfilling her role to do so.  See Vossen, 612 F.3d at 1016. Additionally, upon formulating Plaintiff's RFC, the ALJ accommodated Plaintiff's alleged limitations to the extent she found them credible.  See Tindell, 444 F.3d at 1007.  In conclusion, the court finds that the record contained sufficient evidence

from which the ALJ could determine Plaintiff's RFC, and that the ALJ's RFC determination is based on substantial evidence and consistent with the Regulations and case law.

After formulating Plaintiff's RFC, the ALJ posed a hypothetical to a VE, and the VE testified that Plaintiff could perform her past relevant work as a housekeeper and line operator. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)). The ALJ considered the VE's testimony, and independently considered whether it was consistent with the DOT. (Tr. 25). Cf. Kemp v. Colvin, 743 F.3d 630, 633 (8th. Cir. 2014) (remanding denial of benefits where the record did not reflect whether the VE or the ALJ recognized a possible conflict between the "hypothetical" and the recommended job).

To the extent Plaintiff suggests she could not perform her past relevant work, the VE also testified that there was other work, existing in significant numbers in the national economy, which Plaintiff could perform. See Martise, 641

F.3d at 927.  See also 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled.").

To the extent Plaintiff suggests that the ALJ should have included limitations in the hypothetical posed to the VE beyond those limitations which the ALJ included in Plaintiff's RFC, the ALJ was required to include only those limitations she found credible in the hypothetical.  See Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include complaints in the hypothetical which are not supported by substantial evidence).  Only after determining that there were jobs which Plaintiff could perform did the ALJ find Plaintiff not disabled.  As such, the court finds that the ALJ's decision, in its entirety, is based on substantial evidence and consistent with the Regulations and case law.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint, Brief in Support of Complaint, and Reply (Docs. 1, 15, 19) is **DENIED**;

**IT IS ORDERED** that a separate judgment be entered incorporating this

Memorandum and Order.

Dated this 18th day of August 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE